IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SIN EDDIE FORD, #106998, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:12cv657-TMH |
| | ) | (WO) |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, *et al*., | ) | |
| | ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by state prisoner Sin Eddie Ford ("Ford") on July 27, 2012.  Doc. No. 1.[1]  Ford contends that he was denied due process in prison disciplinary proceedings that took place in December 1990 and January 1991 while he was incarcerated at the former Montgomery Community Based Facility in Montgomery, Alabama.  After reviewing the record and the relevant case law, the court concludes that Ford's petition should be dismissed.

## I.   BACKGROUND

Ford had been serving a state sentence for the offense of murder.  In December 1990, a disciplinary action was initiated against him for violating Rule # 57, insubordination.  A

---

[1] References to document numbers are to those assigned by the Clerk in the instant civil action.  Page references to pleadings are to those assigned by CM/ECF.  References to exhibits are to those filed by the respondents with their answer and are denoted as "Resp. Ex."

separate disciplinary action, for violating Rule # 59 (delaying, hindering, or interfering with a prison employee in performance of his or her duties), arising out of the same incident, was initiated against Ford in January 1991.  Disciplinary hearings were conducted in December 1990 and January 1991, and in both instances, the hearing officer found Ford guilty of the charged infractions.

The sanctions imposed upon Ford for violating Rule # 57 were placement in disciplinary segregation for 21 days, loss of visitation and store privileges for 30 days, and removal from work release for one year.  The sanction imposed for violating Rule # 59 was loss of visitation and store privileges for 30 days.  Ford did not lose any good time credit as a result of either guilty disciplinary finding.

Ford challenged the hearing officer's decisions by filing a petition for a writ of habeas corpus in the Circuit Court of Elmore County, Alabama, in December 2007 – more than fifteen years after either disciplinary proceeding took place.  Resp. Ex. A at 9-14.  In September 2008, the Elmore Circuit Court granted a motion to dismiss Ford's petition filed by the Alabama Department of Corrections.  *Id*. at 75.  Ford appealed to the Alabama Court of Criminal Appeals, which affirmed the judgment of the circuit court on April 24, 2009. Resp. Ex. D.  Ford then filed a petition for certiorari review with the Alabama Supreme Court, which that court denied on August 14, 2009.  Resp. Exs. G & H.

## II.   DISCUSSION

Ford contends that he was denied due process in prison disciplinary proceedings that

took place over fifteen years ago.  Doc. No. 1 at 2-4.

Initially, this court doubts that Ford's claim is cognizable in a federal habeas action. The central purpose of the writ of habeas corpus, whether under 28 U.S.C. § 2254 or 28 U.S.C. § 2241, is to provide a remedy to prisoners who are challenging the "fact or duration" of their physical confinement and are seeking immediate release or an earlier release. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "[T]he common-law history of the writ, . . . the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Id*.  The only relief that can be gained in a habeas action is an immediate or speedier release from custody.  *Id*.

Here, Ford is not challenging the fact or duration of his confinement.  He is not attacking the state court judgment pursuant to which he is in custody.  *See* 28 U.S.C. § 2254(a).  And he did not lose any good time credit as a result of the guilty disciplinary findings.  Therefore, this court concludes that Ford's allegations are not consistent with a petition for a writ of habeas corpus.  *See Muhammed v. Close*, 540 U.S. 749 (2004) (the favorable-termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994) does not apply categorically to all suits challenging disciplinary actions).[2]

---

[2] Even if Ford's action is proper in habeas, his petition would clearly be time-barred under the federal limitation period for § 2254 petitions.  Assuming that the judgment under attack in this action is the Elmore Circuit Court's September 2008 denial of Ford's state habeas petition, and not the guilty findings in the 1990 and 1991 prison disciplinary

(continued...)

Although Ford's allegations are typically presented in an action under 42 U.S.C. § 1983,[3] this court is not inclined to construe his petition as a civil rights complaint through which he could challenge the conditions of his confinement in connection with the disciplinary cases.  Ford has already paid the $5.00 filing fee required in a habeas corpus

---

[2](...continued)
proceedings, Ford's action is still untimely under 28 U.S.C. § 2244(d).  Ford appealed the Elmore Circuit Court's denial of his state habeas petition to the Alabama Court of Criminal Appeals and then sought review in the Alabama Supreme Court.  The Alabama Supreme Court denied Ford's petition for writ of certiorari and issued a certificate of judgment on August 14, 2009.  Ford did not appeal further.  By operation of law, then, the judgment Ford is challenging became final on August 14, 2009 – ninety days after the Alabama Supreme Court's issuance of a certificate of judgment – as this was the date on which the time expired for Ford to file a petition for writ of certiorari with the United States Supreme Court.  *Coates v. Byrd*, 211 F.3d 1225 (11th Cir. 2000) ("A judgment does not become 'final by the conclusion of direct review or by the expiration of the time for seeking such review,' *see* 28 U.S.C. § 2244(d)(1)(A), until the Supreme Court has had an opportunity to review the case or the time for seeking review has expired."); *see also* Rule 13.1, *Rules of the United States Supreme Court* (a petition for writ of certiorari may only be filed to review a judgment or order entered by a state court of last resort and must be filed within 90 days of the action undertaken by such state court).  Under the circumstances, the one-year period of limitation for Ford to seek federal habeas relief ended on August 14, 2010 (i.e., one year after August 14, 2009).  However, Ford did not file the instant § 2254 petition until July 27, 2012, well after the limitation period expired.  Although Ford apparently filed a second state habeas petition on or around September 15, 2011, challenging the same prison disciplinary proceedings, that filing did not toll the federal limitation period, which had already expired before Ford filed the second state petition.  *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001).  It therefore clear that the one-year limitation period contained in 28 U.S.C. § 2244(d) expired before Ford filed the instant petition.

[3] The Eleventh Circuit has recognized that "there exists an '"ambiguous borderland" between habeas corpus and section 1983,' *McKinnis v. Mosely*, 693 F.2d 1054, 1056 (11th Cir. 1982) (per curiam), quoting M. Bator, D. Shapiro, H. Wechsler, *Hart and Wechsler's The Federal Courts and Federal System* 415 (1981 Supp.), the boundaries of which are not always readily apparent."  *Prather v. Norman*, 901 F.2d 915, 920 n.8 (11th Cir. 1990).

proceeding, and the required filing fee for a civil rights case is $350.00.  Moreover, the

passage of time would seemingly have rendered moot the sanctions meted out to Ford in the

disciplinary actions in 1990 and 1991.  Finally, and perhaps most importantly, any attempt

by Ford to proceed, or refile his suit, under § 1983 would be frivolous.  Ford's placement

in disciplinary segregation for 30 days, his loss of privileges, and his removal from work

release for one year did not implicate the protections of the Due Process Clause.

In *Sandin v. Connor*, 515 U.S. 472, 484 (1995), the Supreme Court recognized only

two instances in which a prisoner may claim a constitutionally protected liberty interest[4] that

implicates constitutional due process concerns:  (1) when actions of prison officials have the

effect of altering the inmate's term of imprisonment, and (2) where a prison restraint

"imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life."  *Sandin*, 515 U.S. at 483-84.  The Court in *Sandin* specifically rejected the

contention that any action taken by correctional officials as a punitive measure necessarily

encroaches upon a liberty interest protected under the Due Process Clause.  *Id*. at 484.

"Discipline by prison officials in response to a wide range of misconduct falls within the

---

[4] When a constitutionally protected liberty interest is implicated, the inmate is entitled
to:  (1) written notice of the charges brought against him at least twenty-four hours before
the hearing; (2) an opportunity, when consistent with institutional safety and correctional
goals, to call witnesses and present documentary evidence in his defense; and (3) a written
statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary
action taken.  *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).  The factfinder's decision
need only be supported by "some evidence."  *Superintendent, Mass. Corr. Inst. v. Hill*, 474
U.S. 445, 455-56 (1985).

expected parameters of the sentence imposed by a court of law." *Id*. at 485. Placement in a more restrictive dorm, the loss of privileges and referral for classification review "though concededly punitive, do[ ] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the petitioner. *Id*.

Ford's complaints about placement in disciplinary segregation for 30 days do not implicate a "dramatic departure" from the ordinary conditions of confinement. Moreover, he has made no showing that the conditions of disciplinary segregation were materially different from the conditions imposed on inmates in other types of purely discretionary segregation. Nor has he demonstrated that the conditions on disciplinary segregation, compared with conditions in the general population, created "a major disruption" in his environment or that the length of his sentence was affected. *See Sandin*, 515 U.S. at 486-87 (in determining that plaintiff possessed no liberty interest in avoiding disciplinary segregation, the Court in *Sandin* relied on three factors: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of the plaintiff's sentence was not affected.). *See Rogers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (finding that inmate failed to show deprivation of a protected liberty interest where the inmate was in segregated confinement for two months); *Sealy v. Giltner*, 197 F.3d 578 (2d Cir. 1999) (stating that 101-day disciplinary confinement did not meet the *Sandin* standard

6

of atypicality).

Furthermore, Ford's loss of privileges for, at most, a total of 60 days is neither "atypical" nor a "significant hardship" under the *Sandin* analysis. The restriction of privileges is not a dramatic departure from the ordinary conditions of confinement, nor is it a major disruption in a prisoner's environment. *Sandin*, 515 U.S. at 485; *see also Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (providing that temporary withdrawal of visitation privileges for disciplinary purposes was "not a dramatic departure from accepted standards for conditions of confinement"); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (prisoner did not suffer a liberty loss when he received as disciplinary punishment a verbal reprimand, two-week loss of commissary privileges, and a suspended, 15-day disciplinary segregation sentence). Therefore, Ford did not suffer a deprivation of a liberty interest when his privileges were restricted.[5]

As for Ford's removal from work release for one year, "the baseline for determining [restraints which constitute the requisite atypical and significant hardship] is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her

---

[5] Alabama courts have determined that a prisoner does not have a liberty interest in store privileges, *Zamudio v. State*, 615 So. 2d 156, 157 (Ala. Crim. App. 1993); *Summerford v. State*, 466 So. 2d 182, 185 (Ala. Crim. App. 1985), in telephone privileges, *Zamudio*, 615 F.2d at 157, and in not being assigned extra work duty, *id*.; *Summerford*, 466 So. 2d at 185. Since the decision in *Sandin*, one Alabama court has held that a prisoner was not deprived of a liberty interest by a disciplinary sentence consisting of 32 days in segregation and the loss of store, telephone, and visitation privileges. *Dumas v. State*, 675 So. 2d 87, 88 (Ala. Crim. App. 1995).

conviction." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997). "*Sandin* does not permit [a federal court] to compare the prisoner's own life before and after the alleged deprivation. Rather, [the court] must compare the prisoner's liberties after the alleged deprivation with the normal incidents of prison life. *See Sandin*, 515 U.S. at 485-86 . . . . Since an inmate is normally incarcerated in prison, [Ford's] return to prison [from work release] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Dep't of Corr.*, 186 F.3d 407, 412 (3d Cir.1999).

An inmate removed from a work-release program for various penalogical reasons and transferred to a medium security prison does not possess a protected liberty interest in remaining in work release, because confinement within the prison walls constitutes "an 'ordinary incident of prison life.' It is not 'atypical.'" *See Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996); *see also Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir.1996) (return of an inmate to prison after revocation of his work release status imposed neither an atypical nor significant deprivation under *Sandin* because prison is "not atypical of what inmates have to endure in daily prison life.").[6]

---

[6] An inmate in the Alabama prison system has no liberty interest that entitles him to work release, *Francis v. Fox*, 838 F.2d 1147, 1149 (11th Cir. 1988), nor does the Due Process Clause itself create a constitutionally protected interest in work release, *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (inmate denied permission to participate in work release has no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary
(continued...)

8

In light of the foregoing, it is clear that the sanctions levied against Ford failed to "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Ford's placement in disciplinary segregation, his loss of privileges, and his removal from work release were not sufficient to trigger constitutional due process protection. Thus, Ford's claims do not rise to the level of a constitutional violation as a matter of law.[7]

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for a writ of habeas corpus be DISMISSED because Ford has failed to demonstrate that the disciplinary actions resulting in his placement in disciplinary segregation, loss of privileges, and removal from work release give rise to any claim for federal habeas relief or state any claim for a denial of his constitutional right to due process.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 17, 2014**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is

---

[6](...continued)
experience of inmates"); *see also Codd v. Brown*, 949 F.2d. 879 (6th Cir. 1991) (prisoners have no inherent due process interest in work release).

[7] In order to state a claim under § 1983, there must be a violation of the Constitution. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 4th day of March, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE